IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MARTIN JAMES DAWSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:14CV225 |
| | ) | |
| NAOMI JAYNE STEADMAN MCPHERSON, | ) | |
| | ) | |
| Respondent. | ) | |

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is before the Court on Motion for Order and Judgment Awarding Expenses ("Motion") [Doc. #11], filed by Petitioner Martin James Dawson ("Petitioner") pursuant to the provisions of the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11607. Petitioner's Motion is before the Court following the Court's Order [Doc. #16] to return his minor children, C.M.S. and L.S., to the United Kingdom pursuant to the Convention on the Civil Aspects of International Child Abduction, October 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 49 ("the Hague Convention") and the provisions of ICARA. Respondent Naomi Jayne Steadman McPherson ("Respondent") filed a Brief in Opposition to Petitioner's Motion [Doc. #17] and Petitioner subsequently filed a Reply Brief [Doc. #20]. For the reasons stated herein, the Court will grant Petitioner's Motion pursuant to ICARA, however the Court will not award the full amount of requested attorneys' fees and such an amount will be reduced to a reasonable sum as articulated herein.

I.    FACTUAL AND PROCEDURAL BACKGROUND

On March 17, 2014, Petitioner filed a Verified Petition for Return of Children under the Hague Convention ("Verified Petition") [Doc. #1] seeking the return of his children, C.M.S. and L.S. ("the Children"), to the United Kingdom. As set forth in the Verified Petition, Petitioner, the father of the Children, gave Respondent, the mother of the Children, permission to take the Children from the United Kingdom–the Children's place of birth and permanent residence–to Colfax, North Carolina to visit Respondent's mother. The Children left the United Kingdom with Respondent on October 9, 2013. The Children were scheduled to leave the United States on November 13, 2013 and return to the United Kingdom on November 14, 2013. Petitioner never gave Respondent permission to retain the Children in the United States past November 13, 2013. As further detailed in Petitioner's Verified Petition [Doc. #1] and the Court's Order Granting Joint Consent Motion for Entry of Order of Return of Children [Doc. #16], Respondent wrongfully retained the Children in the United States until March 19, 2014. On March 19, 2014, United States Marshals executed a warrant, issued by the Court, directing the Marshals to take physical custody of the Children and place them with Petitioner. On March 27, 2014, the Court held a hearing on the Verified Petition and entered the Order Granting Joint Consent Motion for Entry of Order of Return of Children [Doc. #16]. Also, on March 27, 2014, Petitioner filed the instant Motion [Doc. #11], requesting that the Court enter an order requiring Respondent to "pay the necessary expenses that Petitioner incurred, including court costs, legal fees, transportation costs, and accommodation costs related to the return of his minor children" pursuant to 42 U.S.C. 11607(b)(3) of ICARA. (Mot. for Order & J. Awarding

Expenses [Doc. #11], at 1.) On April 10, 2014, Respondent filed a Brief in Opposition to Petitioner's Motion [Doc. #17] and, on April 16, 2014, Petitioner filed a Reply Brief [Doc. #20]. On April 24, 2014, this Court held a hearing on Petitioner's Motion where the Court advised the parties that it would award expenses in this case as it deems appropriate and necessary. The Court will now discuss Petitioner's instant Motion in turn.

II.  DISCUSSION

With respect to attorneys' fees and expenses incurred in defense of rights granted under ICARA, 42 U.S.C. § 11607(b)(3) provides:

> Any court ordering the return of a child pursuant to an action brought under section 11603 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

42 U.S.C. § 11607(b)(3). Thus, Respondent has the burden of showing that it would be clearly inappropriate to grant Petitioner's request for attorneys' fees and expenses and any non-legal expenses, that were related to the return of the Children. Respondent's actions in wrongfully retaining the Children in the United States and denying Petitioner's custody rights caused Petitioner to incur considerable expense in the vindication of those rights. In cases similar to the instant case, courts have generally awarded attorneys' fees and non-legal expenses, related to the return of a child, to parties whose parental rights have been violated under the Hague Convention and ICARA. See e.g. Trudrung v. Trudrung, No. 1:10CV73, 2010 WL 2867593 (M.D.N.C. July 21, 2010); Neves v. Neves, 637 F. Supp. 2d 322 (W.D.N.C. 2009); Wasniewski v. Grzelak–Johannsen, 549 F. Supp. 2d 965 (N.D. Ohio 2008); Flynn v. Borders, No.

3

5:06–323–JMH, 2007 WL 862548 (E.D. Ky. Mar. 20, 2007); Friedrich v. Thompson, 1:99-CV-772, 1999 WL 33951234 (M.D.N.C. Nov. 26, 1999). This Court's decision to order the return of the Children to Petitioner signifies that Respondent's actions were wrongful. Moreover, the Court recognizes that ICARA, by providing for an award of attorneys' fees and expenses after a judgment of wrongful removal or retention of a child, contemplates the use of such awards as a deterrent to violations of the Convention. See 51 Fed. Reg. 104991-01, 10511. In light of this purpose, and after careful review of the parties' pleadings on this issue, the Court finds that Respondent has failed to establish that it would be clearly inappropriate for the Court to award attorneys' fees and expenses to Petitioner in this instance.[1] Therefore, the Court need only determine the reasonableness of the dollar amount requested by Petitioner for fees and expenses related to the return of the Children. Petitioner requests a total of $41,938.57 in attorneys' fees and expenses and $7,795.78 for other, non-legal expenses incurred by Petitioner in securing the return of the Children.[2] The Court will first address Petitioner's request for attorneys' fees and expenses and the Court will thereafter address Petitioner's request for non-legal expenses.

---

[1] The Court finds this particularly true even in light of Respondent's argument that an order requiring Respondent to pay Petitioner's expenses would worsen Respondent's "straitened financial circumstances" due to her nominal assets and unemployment status. (Resp. Br. [Doc. #17], at 21.) This is because, even if the Court considered Respondent's contention that she suffered straitened financial circumstances at the time Petitioner requested attorneys' fees and expenses in March 2014, Respondent's financial circumstances have appeared to improve. Specifically, Respondent filed an affidavit with the Leeds Family Court, in England, stating that she has a full time offer of employment within the United States, with a salary of $48,000.00. (See Exhibit [Doc. #22-1], at 8.)

[2] For the non-legal expenses and attorneys' fees charged originally in British Pounds, Petitioner converted from British Pounds to United States Dollars using the exchange rate applicable on the date that Petitioner believes he incurred such charges. (Dawson Aff. [Doc. #12], at 1-2.)

4

A. Attorneys' Fees and Expenses

Petitioner requests a total of $41,938.57 in attorneys' fees and costs. Specifically, Petitioner requests (1) $31,672 in attorneys' fees for the representation of Smith Moore Leatherwood LLP in Greensboro, North Carolina ("North Carolina Representation") in bringing the instant action and $400 for filing costs; (2) $7,684.85 in attorneys' fees for the representation of Irwin Mitchell LLP in Leeds, England, United Kingdom ("Leeds Representation") for obtaining a Request for Return Application under the Hague Convention; (3) $1,665.60 in attorney's fees for the representation of Mark Jarman in London, England United Kingdom for obtaining a Article 15 Declaration[3] from the High Court of Justice in London, England; and (4) $816.12 in court costs and issuance fees for the Article 15 Declaration from the High Court of Justice in London, England. The Court will address the reasonableness of these fees and expenses in turn.

It is well established that the "lodestar" approach is the proper method for determining reasonable attorneys' fees. Grissom v. The Mills Corp., 549 F.3d 313, 320-21 (4th Cir. 2008); Trudrung, 2010 WL 2867593, at *2; Neves, 637 F. Supp. 2d at 339-40; Wasniewski, 549 F. Supp. 2d at 971 n.5; Flynn, 2007 WL 862548, at *2; Friedrich, 1999 WL 33951234; Distler, 26 F. Supp. 2d at 727; Freier, 985 F. Supp. at 712; Berendsen, 938 F. Supp. at 738. Consistent with the general acceptance of the method, federal courts have applied the lodestar approach to cases

---

[3]In the Article 15 Declaration, the High Court of Justice in London, England declared that Petitioner had parental responsibility for, and rights of custody in relation to, the Children within the meaning of the Hague Convention. (See Article 15 Declaration [Doc. #1-6], at 1-5.) The Declaration also determined that the Children were habitual residents of England and Wales. (Id.)

5

where ICARA is at issue. Trudrung, 2010 WL 2867593, at *2; Neves, 637 F. Supp. 2d at 339-40. The lodestar figure is determined by multiplying the number of reasonable hours expended times a reasonable rate. See Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983); Grissom, 549 F.3d at 320-21; Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 174-75 (4th Cir. 1994). To determine the reasonable rate and reasonable number of hours to use in calculating reasonable attorneys' fees under the lodestar approach, the Court is guided by the twelve "Johnson" factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputations, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Rum Creek, 31 F.3d at 175; (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)). These "Johnson" factors are to be considered as part of the Court's determination of the reasonable number of hours and the reasonable rate to be used in this case. See Grissom, 549 F.3d at 320-21. Therefore, in applying the lodestar analysis, the Court has the discretion to reduce the award requested by Petitioner. Hensley, 461 U.S. at 437. With this standard in mind, the Court will first determine whether the number of hours incurred by Petitioner's attorneys in this matter were reasonable.

1. Reasonableness of Number of Hours

To establish the number of hours reasonably expended, Petitioner must "submit evidence supporting the hours worked." Hensley, 461 U.S. at 433. The number of hours should be reduced to exclude hours that are "excessive, redundant, or otherwise unnecessary" in order to reflect the number of hours that would properly be billed to the client. See id. at 434, 76 L. Ed. 2d at 51; Daly v. Hill, 790 F.2d 1071, 1079 (4th Cir. 1986); Neves, 637 F. Supp. 2d at 340 (citing Wasniewski, 549 F. Supp. 2d at 972). In the present case, Petitioner has submitted itemized billing records to establish the number of hours worked by his North Carolina Representation and his Leeds Representation in this case. (Pet. Br. Supp. Mot. for Order & J. Awarding Exps. [Doc. #14] at 13; Dawson Aff. [Doc. #12], Exs. E, F; Dildine Aff. [Doc. #13].) As Petitioner has submitted documentation and billing records as it relates to his North Carolina Representation and his Leeds Representation, the Court will address the reasonableness of those attorneys' hours in turn.[4]

a. North Carolina Representation

The number of hours reported as it relates to Petitioner's North Carolina representation in this case is as follows: (1) Attorney Marilyn Feuchs-Marker reports 8.7 hours of work; (2) Attorney Laura Dildine reports 100 hours of work; (3) Kathy Hawkins, a paralegal, reports 21.8 hours of work; and (4) Philip Cox, a litigation support employee, reports 17.5 hours of work.

---

[4]As to the Mr. Jarman's fee, a discussion concerning the reasonableness of hours is not necessary because Mr. Jarman was compensated using a flat fee for his services. Whether or not the fee was reasonable in light of the tasks he performed will be discussed below in conjunction with the reasonableness of his rate.

(Dildine Aff. [Doc. #13].)  Petitioner contends that the above-referenced hours, which were spent to bring and litigate the instant action, are reasonable because of the amount of time necessary to (1) draft the pleadings, motions, and petition involved in this case; (2) to conduct research; (3) to communicate with the Department of State, Petitioner's private investigator, the Court and United States Marshal; (4) to analyze parental responsibility and rights of custody under United Kingdom law, which included conferral with Petitioner's Leeds Representation; and (5) to review the evidence submitted in this case, which includes emails and social media communications between Petitioner and Respondent, Petitioner and Respondent's mother, and Petitioner's sister and Respondent's mother.  Respondent challenges as unreasonable "the hours expended on drafting pleadings and preparation." (Resp. Br. Opp'n of Pet.'s Mot. [Doc. #21], at 5.)  Respondent also contends that because Ms. Feuchs-Marker has "litigated matters for petitioners under the Hague Convention and has experience with matters involving international matters" that the hours expended by Petitioner's counsel is unreasonable.  (Id. at 6.)  Overall, Respondent contends that the amount of hours spent by Petitioner's counsel is "excessive, unnecessary, and unreasonable."  (Id. at 5.)

After consideration of the level of difficulty presented by this case and the experience and abilities of the attorneys involved in this case, and after careful review of the affidavits submitted by Petitioner's attorneys detailing the nature of the work done on the case, the Court, respectfully, finds that the amount of time reported by Petitioner's attorneys and support staff is not totally justifiable.  With respect to the consideration of the amount of hours expended in this case, the Court finds that some of the hours expended by Petitioner's counsel and

Petitioner's nonlegal staff to be duplicative and excessive. Specifically, Ms. Dildine has presented an itemized table in which she spent several hours doing an activity all in one day (i.e. spending 7.5 hours on March 17, 2014, involving preparation of exhibits and pleadings and her arguments for the *ex parte* motion hearing in this case) and she further contends that she spent several additional hours doing that same activity on another day (i.e. spending 4 hours on March 18 doing the same, or similar, activity as March 17, 2014), without meaningfully distinguishing the activity on one day from another day. Furthermore, many of Ms. Feuchs-Marker's hours seem to have been spent reviewing Ms. Dildine's completed work or finalizing work that Ms. Dildine initially started but did not complete based on the itemized table.

Ms. Dildine's itemized table also shows that she may have spent several hours doing one activity (i.e. 7.5 hours on March 17, 2014, preparing exhibits and pleadings and her arguments for the ex parte motion hearing in this case) while Ms. Hawkins and Mr. Cox spent several hours doing the same activity (i.e. in regards to Ms. Hawkins, spending a total of 6.8 hours on March 17 and 18 preparing and finalizing exhibits for the ex parte motion hearing in this case, and in regards to Mr. Cox, spending 7.4 hours on March 17 and 18 assisting in preparing and finalizing exhibits for the ex parte motion hearing in this case). An overview of Ms. Dildine's itemized table shows several instances where either (1) Ms. Dildine, Ms. Hawkins, or Mr. Cox spent several hours, spread across multiple days, on the same, or similar, activity, and (2) Ms. Dildine, Ms. Hawkins, or Mr. Cox spent several hours engaging in activity that cannot be meaningfully distinguished from the activity of one another. Without a more detailed account of the work specifically done by Ms. Dildine, Ms. Hawkins, or Mr. Cox, or without an explanation of the

considerable amount of hours engaging in what appears to be the same activity, the Court is left with little choice but to find that the number of hours reported by Ms. Dildine, Ms. Hawkins, and Mr. Cox to be excessive and duplicative in certain areas.

Where a district court finds a duplication in the hours reported by the attorney of the party requesting attorneys' fees, the court has discretion to exclude from the calculation of attorneys' fees hours that were not "reasonably expended." Hensley, 461 U.S. at 433. Furthermore, "[w]here the attorney's documentation is inadequate, or the claimed hours are duplicative or excessive, the [C]ourt may reduce the award accordingly. Neves, 637 F. Supp. 2d at 340 (citing Wasniewski, 549 F. Supp. 2d at 972). The Court finds that there is a lack of specificity as it relates to some of the work performed by Ms. Dildine, Ms. Hawkins, or Mr. Cox. There is also, what appears to be duplication of the work done by Ms. Dildine, Ms. Feuchs-Marker, Ms. Hawkins, and Mr. Cox. As such, it is not possible for the Court to isolate or distinguish the exact number of hours Ms. Dildine, Ms. Feuchs-Marker, or their assisting staff spent on performing necessary tasks to prepare for this case or to determine why the efforts of these four individuals, on what appears to be very similar–if not the same–activities, were necessary in this case. Therefore, the Court will reduce the number of hours reported for work done by Petitioner's North Carolina representation by 20%. The reduced number of hours reflects what appears to be the duplication of work performed by Ms. Dildine, Ms. Feuchs-Marker, Ms. Hawkins, and Mr. Cox. Accordingly, after subtracting 20% from the number of hours submitted by Petitioner's North Carolina Representation, the reasonable number of hours attributable to each is as follows: Ms. Dildine - 80 hours; Ms. Feuchs-Marker - 6.96 hours; Ms.

Hawkins - 17.44 hours; and Mr. Cox - 14 hours.

    b.  Leeds Representation

 Petitioner's Leeds Representation has reported 22.75 hours preparing the December 4, 2013 Request for Return Application under the Hague Convention (see [Doc. #1-10].) and assisted in "subsequent related matters through the end of December 2013." (Pet.'s Br. [Doc. #14], at 11.)  In support of these hours worked, Petitioner filed an affidavit along with an invoice, which purports to breakdown the fees charged for the Leeds Representation. (Dawson Aff. [Doc. #12], Ex. F.)  The fee breakdown, however, is not as informative as the itemized list provided by Petitioner's North Carolina Representation.  The fee breakdown contains the date of services, a description of services rendered, the name of counsel performing the services, the hours worked, counsel's rate per hour, the amount of time worked, and the billed amount.  While the fee breakdown is detailed, in that it tells who worked on the case, for how long, and how much was billed for the services, the explanation of the actual services is not descriptive.  For instance, the description for one hour, for which the client was billed £921.25,[5] states

---

[5] The Court notes, that while it need not address the reasonableness of their rate because it finds the entirety of the Leeds Representation's hours unreasonable, the Court would question the reasonableness of their rate if necessary.  For instance, Counsel Peter Morris allegedly worked one hour on the task of "Attendance - Client" and his billable rate is listed as £280 per hour.  Yet, Mr. Morris billed Petitioner £921.25 for this hour, not £280.  No explanation is provided for this discrepancy.  Furthermore, such discrepancy occurs in every instance in which Mr. Morris bills Petitioner for his time and, while Petitioner is billed for other counsel's time, the majority of the invoiced amount appears to be a result of Mr. Morris's billing.  Petitioner has also not provided any basis for why the rates billed by the Leeds Representation are reasonable according to the prevailing market rates in the geographical area.  Instead, Petitioner only conclusively states that he believes the rates to be reasonable. (Pet.'s Br. [Doc. #14], at 12.) Accordingly, even if this Court was required to address the reasonableness of Leeds Representation's rates, it would find such rates to be unreasonable, given the discrepancies in

11

"Attendance - Client." (Id. at 4.) Other examples of billed for time, include descriptions such as, "Long Telephone Calls - Client, " "Consideration/ perusal - Detailed Correspondence/ emails - TOB letter," and "Preparation/ drafting - Detailed File Note."

The Petitioner "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley, 461 U.S. at 437. In this instance, as it relates to his Leeds Representation, Petitioner has failed to meet this burden. The Court is unable to decipher what tasks the Leeds Representation actually performed during the time for which they billed Petitioner based on the fee breakdown submitted by Petitioner. Therefore, it is impossible to know whether Petitioner was billed for duplicative efforts and whether the time billed for was spent on necessary tasks relevant to the instant action. Accordingly, the Court denies Petitioner's request for attorneys' fees for his Leeds Representation, because the Court cannot determine whether any of the hours billed were reasonable in light of the factors to be considered.

2. Reasonableness of Rate

Once a reasonable number of hours has been determined, the Court must determine a reasonable rate, "calculated according to the prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 895, 104 S. Ct. 1541, 1547, 79 L. Ed. 2d 891 (1984). "This determination is fact-intensive and is best guided by what attorneys earn from paying clients for similar services in similar circumstances." Rum Creek, 31 F.3d at 175. As to Petitioner's North Carolina representation, Ms. Feuchs-Marker charged Petitioner an hourly rate of $375, Ms.

---

the billing and the complete lack of evidence supporting the reasonableness of the rates.

Dildine charged an hourly rate of $235, Ms. Hawkins charged an hourly rate of $165, and Mr. Cox charged an hourly rate of $75.  (Dildine Aff. [Doc. #13].)  Ms. Dildine represents that the hourly rates charged by both Ms. Feuchs-Marker and Ms. Dildine are within the range of rates that are charged by other family law attorneys with similar experience and skill in Greensboro, North Carolina.  (Id., at 2.)  Ms. Dildine has been licensed to practice since 2010 and Ms. Feuchs-Marker has practiced family law since 1990.  Furthermore, as to Ms. Hawkins, a paralegal with 29 years of experience, and Mr. Cox, a litigation support employee with 20 years of experience, Ms. Dildine represents that their rates are also reasonable in comparison with the rates charged by others providing similar services in the Greensboro area.  (Id., at 10.) Petitioner further represents that, as to his London counsel, Mr. Jarman, the flat fee of $1,665.60, is believed to be reasonable for the services he rendered in obtaining Petitioner's Article 15 Declaration.

Respondent contests the reasonableness of the rate of both Petitioner's North Carolina Representation and Mr. Jarman.  Specifically, Respondent argues that Ms. Dildine's rate is only $15 less than the rate charged by Respondent's counsel who is a North Carolina Board Certified Family Law Specialist.  Respondent implies that because Ms. Dildine does not practice primarily family law and is not certified in such matters, that she should not be charging an hourly fee of $235 for handling such cases.  As to Mr. Jarman, Respondent argues that because Petitioner did not provide any evidentiary support concerning the reasonableness of the flat fee, such a fee should not be awarded.

Both the Supreme Court and the Fourth Circuit prescribe a method of rate determination

13

whereby the district court uses discretion influenced by "evidence of fees paid to attorneys of comparable skill in similar circumstances." Blum, 465 U.S. at 895; Rum Creek, 31 F.3d at 175. In this instance, as to Petitioner's North Carolina Representation, the Court reviewed Ms. Dildine's Affidavit submitted by Petitioner and the Court has also reviewed the 2012 North Carolina Bar Association Economic Survey ("North Carolina Survey") outlining estimations of the hourly rates charged by attorneys and support staff. Based on this review, the Court finds that a rate reduction is appropriate as to Ms. Dildine, Ms. Hawkins, and Mr. Cox. According to the North Carolina Survey only 12.2% of attorneys licensed to practice since 2010 billed more than $200 per hour. While the Court notes, that the survey is from 2012, only 10.5% of attorneys licensed to practice in 2008, two years prior to when Ms. Dildine was licensed to practice, were billing more than $200 per hour. Whereas, almost 60% of attorneys who have practiced as long as Ms. Feuchs-Marker were billing over $200 per hour in North Carolina in 2012. As stated above, Ms. Hawkins, a paralegal, billed $165 per hour. The North Carolina Survey estimates that 55.2% of paralegals billed over $70 in 2012. The survey, however, does not breakdown the 55.2% any further. Meaning, it is impossible to determine how much of this percentage bills at a rate closer to that billed by Ms. Hawkins. Mr. Cox, the litigation support employee, billed $75 per hour. The North Carolina Survey estimated that only 34% of legal assistants billed over $70 per hour. Again, however, the survey does not breakdown the 34% any further. Accordingly, the Court finds that Ms. Dildine's, Ms. Hawkins', and Mr. Cox's rates should be reduced based on this information, in order to achieve congruence with those rates charged for similar services in the North Carolina legal market. Therefore, the Court, in its

14

discretion, will reduce the rates of Ms. Dildine to $215, Ms. Hawkins to $75, and Mr. Cox to $50. However, as to Ms. Feuchs-Marker's fee, the Court finds the fee of $375 per hour is reasonable based on Ms. Feuchs-Marker's experience and the amounts billed by those with similar experience in North Carolina.

In order to determine whether Mr. Jarman's rate is reasonable for his work in obtaining the Article 15 declaration, this Court has the affidavit submitted by Petitioner, which includes a copy of the fee arrangement between Petitioner and Mr. Jarman, and the Court has Petitioner's assertion that such a flat fee is believed to be reasonable for the services provided by Mr. Jarman. Furthermore, this Court has the fee breakdown from Petitioner's Leeds Representation to also examine in comparison with Mr. Jarman's flat fee. Petitioner's Leeds Representation billed Petitioner up to £280 per hour. Mr. Jarman's fee was a one-time flat fee of £1,000 or $1,665.60. For this fee, he prepared the information and aided in obtaining the Article 15 Declaration, which was an important part of Petitioner obtaining custody of his Children in the United States. Accordingly, in light of the hourly rates charged by Petitioner's other representation located in England and the task he performed for his fee, the Court finds no reason to reduce Mr. Jarman's flat fee, as it appears reasonable.

As the Court has now determined both the reasonable number of hours and the reasonable rate, the Court must multiply the two factors to produce a reasonable fee:

| Attorney/Staff | Hours | Rate | Total |
| --- | --- | --- | --- |
| Ms. Feuchs-Marker | 6.96 | $375 | $2,610 |
| Ms. Dildine | 80 | $215 | $17,200 |

15

| Ms. Hawkins | 17.44 | $75 | $1,308 |
| Mr. Cox | 14 | $50 | $700 |
| Mr. Jarman | Flat fee | $1,665.60 | $1,665.60 |

The calculation based upon the above illustration reveals that Petitioner is entitled to attorneys' fees in the amount of $23,483.60.

   B.   Non-Legal Expenses

Petitioner also requests that the Court award him $6,979.66 for non-legal expenses, for which he can provide documentation. Those amounts are attributed to (1) the cost of the round trip airline ticket for Petitioner; (2) the cost of the one-way airline tickets for the Children; (3) the cost of the change flight fee for Petitioner; (4) the cost of the private investigator hired to locate the Children in the United States; and (5) Petitioner and the Children's lodging in the United States. (See Pet. Br. Supp. Mot. for Order & J. Awarding Exps. [Doc. #11], at 13; Dawson Aff. [Doc. #12], Exs. A - D, G.) The Court finds these non-legal expenses to be properly documented and reasonable. Further, such expenses, which were incurred during the pendency of this action, were necessary and not inappropriate pursuant to 42 U.S.C. § 11607(b)(3). See Neves, 637 F. Supp. 2d at 344 (finding that airfare, lodging, transportation, postage, and investigative expenses reasonable and necessary under ICARA). Thus, Petitioner is entitled to receive those actual expenses in the amount of $6,979.66, given the Court's finding as to the necessity of those expenses which are related to Petitioner's efforts to obtain the return of the Children under ICARA and the Hague Convention.

Petitioner also requests an additional $816.12 in court costs relating to his Article 15 Declaration. Petitioner, however, is unable to provide documentation concerning these expenses. Therefore, the Court is unable to assess the validity of such expenses. If the Court cannot assess the validity of the expenses, it cannot begin to address whether such expenses were in fact reasonable or necessary. Accordingly, the Court declines to award Petitioner the expenses for which he cannot provide documentation, specifically, as it relates to Petitioner's request for $816.12 in court costs associated with his Article 15 Declaration.

III. CONCLUSION

For the foregoing reasons, Petitioner's Motion for Order and Judgment Awarding Expenses [Doc. #11] is GRANTED IN PART AND DENIED IN PART. The Court will award attorneys' fees and expenses in this case, but will reduce the requested amount of attorneys' fees as to a reasonable sum as discussed above. IT IS THEREFORE ORDERED, that Respondent is to pay to Petitioner the total sum of $30,463.26, reflecting attorneys' fees in the amount of $23,483.60 and necessary expenses in the amount of $6,979.66.

A Judgment consistent with this Memorandum Opinion and Order will be filed contemporaneously herewith.

This the 23rd day of September, 2014.

_____
United States District Judge